UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DOMINIQUE ANTIONE JONES** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-2125** |
| **JACK STEPHEN, ET AL** | **SECTION: "J" (4)** |

### PARTIAL REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.

On July 25, 2005, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by telephone.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 6. The plaintiff was sworn prior to testifying. A cassette tape recording of the hearing is being placed in the custody of the Court Recording Unit along with a copy of this Report and Recommendation.

### I.     Factual Background

#### A.     The Complaint

The plaintiff, Dominique Antione Jones ("Jones"), was incarcerated in the St. Bernard Parish Jail in Chalmette, Louisiana, at the time of the filing of this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983.  He filed suit against St. Bernard Parish Sheriff Jack Stephens, Warden David Mowers, and Lieutenant Keith Gieo seeking monetary damages for the defendants' alleged failure to provide him with access to a law library and legal assistance.

He alleges that, on January 27, 2005, he requested law books from prison officials to prepare for his pending felony charges.  He claims that he spoke to Lieutenant Gieo about the problem on three occasions.  He also states that he then wrote grievance requests for books on February 7, 2005, and April 27, 2005.  He claims that, on one occasion, Lieutenant Gieo told him that the jail did not have law books.  Jones alleges that he then wrote a grievance to Warden David Mowers on May 9, 2005, but did not receive a response.

Jones further alleges that, after he was convicted, he was unable to file motions and file for post conviction relief because the jail had no law books.  He therefore seeks monetary damages, a transfer to a Louisiana Department of Corrections ("DOC") facility and an injunctive order directing the St. Bernard Parish Jail to allow inmates to use law books and to communicate with a legal advisor.

#### B.     The *Spears* Hearing

Jones testified that he is serving a five year sentence after his plea of guilty to the charge of possession with intent to distribute cocaine.  He further testified that, while his criminal case was

pending, he wrote to prison officials to get law books to do research on his criminal case. He also said that the prison has no legal assistance available for the inmates.

Jones testified that his court appointed lawyer was not really helping him and he wanted to have him fired. He stated that the judge told the lawyer that, if he was fired, the plea bargain would increase to a seven year sentence. He also indicated that the District Attorney told him that if he was found guilty at trial, he would file a multiple bill. Jones further testified that his lawyer only wanted him to plea. He stated that his case had faults and errors but he needed law books to do his own research. He also testified that he did not know what particular book that he needed, he just wanted to see "the 2005 law books."

Jones also claimed that he made his request for law books to both Lieutenant Gieo and Warden Mowers. He further claimed that he wrote four or five grievances on the matter to both Gieo and Mowers. He testified that the St. Bernard Parish Jail requires that the first step grievance complaint is made to Lieutenant Gieo and the second to the Warden. He stated that he did not receive a response to either step. He also conceded that he never wrote to or spoke with Sheriff Stephens about his problem getting law books.

As relief, he wants a retrial because he does not think he had a fair shot with the state appointed lawyer. He also wants a transfer to a DOC facility.

**II.     Standards of Review for Frivolousness**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d

114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Himnandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28.  Therefore, the Court must determine whether the plaintiffs' claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**III.    Supervisory Liability**

Jones named Sheriff Stephen as a defendant in his complaint.  Jones has indicated that he never spoke to or wrote to the Sheriff about his request for law books or legal assistance.  Under the broad reading afforded to a *pro se* complaint, Jones has named Sheriff Stephen as a defendant because of his supervisory role over the St. Bernard Parish Jail.

However, a supervisory official cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979).  Moreover, a state actor may be liable

under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980).

Jones concedes that he did not notify Sheriff Stephens about the events of which he complains. He also has not alleged that Sheriff Stephens was personally involved in the failure to provide him with law books or his inability to access the state courts with his grievances. Without any personal knowledge or involvement, Sheriff Stephens cannot be held liable in this case.

For the foregoing reasons, the claims against Sheriff Stephen as supervisor over the St. Bernard Parish Jail are frivolous and otherwise fail to state a claim for which relief can be granted.

**IV.   Request for Transfer**

As part of his requested relief, Jones seeks a transfer to a DOC facility where he would have access to a law library and assistance. His request for transfer is frivolous for the following reasons.

It is well settled that the due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute § 15:824, authorizes the Director of Corrections to decide which penal institution an inmate should be delivered or transferred.[3] The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Secretary*, 1996 WL 89260 at *4 (E.D. La. Feb. 28, 1996) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

Thus, the State of Louisiana by its broad discretionary statutes has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another. *Santos*, 1996 WL 89260 at *4. Therefore, Jones has no constitutional right to a transfer and his request for transfer is frivolous.

---

[3]La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.

B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

**V.      Denial of Access to Legal Materials Claim Against Mowers and Gieo**

Jones complains that he requested law books from Lieutenant Gieo, who told him that the jail had no law books.  He also wrote to Warden Mowers on May 9, 2005, about his request and received no response.

Prisoners have a constitutional right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel.  *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Pembroke v. Wood County*, 981 F.2d 225, 229 (5th Cir. 1993).  However, "restrictions on direct access to legal materials may be warranted when prison security is involved."  *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).  "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court."  *Id.* (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)).

Significantly, to state a claim that the constitutional right of access to the courts was violated, a prisoner must demonstrate that his position as a litigant was actually prejudiced.  *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996); *Eason*, 73 F.3d at 1328; *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993) (citing *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir. 1992)).  The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis*, 518 U.S. at 351.

Jones has alleged that he was unable to properly prepare for his criminal proceedings, in which he was represented by counsel, and later unable to pursue post conviction relief because of the lack of legal materials and assistance at the prison.  He therefore alleges that he was prejudiced in connection with his criminal case.  However, with regard to his criminal proceedings before his

7

plea, the fact that he was represented by counsel in his criminal proceeding satisfies the right of access to the courts as guaranteed by the Constitution and interpreted by the Supreme Court in *Bounds*. *Schrier v. Halford*, 60 F.3d 1309, 1313-1314 (5th Cir. 1995); *Mann v. Smith*, 796 F.2d 79, 83 (5th Cir. 1986); *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985).

However, with regard to his stifled efforts to gain access to the courts for purposes of his post conviction efforts, Jones has at least alleged prejudice as a result of the unavailability of legal materials at the prison. *Eason*, 73 F.3d at 1328; *Walker*, 4 F.3d at 413. Jones contends that Mowers and Gieo both failed to respond to his request or make any provision for him after receiving his request. In this regard, he has alleged a claim for denial of access to legal materials and assistance sufficient to survive the Court's review for frivolousness.

## VI.    Recommendation

It is therefore **RECOMMENDED** that Jones's request for a transfer and his § 1983 claims against Sheriff Stephens be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. §1915(e) and § 1915A and Title 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that Jones's § 1983 claims against Warden David Mowers and Lieutenant Keith Gieo be allowed to proceed forward as the plaintiff has stated a claim for denial of his right of access to the courts sufficient to survive the Court's review for frivolousness. These claims would remain referred to the Magistrate Judge for further proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal

the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this \_\_\_\_9th\_\_\_\_ day of May, 2006.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**